507 P.2d 790

Helen ARAGON, Appellant,

v.

HEALTH AND SOCIAL SERVICES DE-
PARTMENT of the State of
New Mexico, Appellee.

No. 1014.

Court of Appeals of New Mexico.

Feb. 23, 1973.

Gary J. Martone, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., James G. Huber, Agency Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

LOPEZ, Judge.

This is an appeal from the appellee's administrative hearing officer denying to appellant aid to the disabled (AD) benefits. Appellant claims that her application for AD of March, 1971 was wrongfully denied and that appellee wrongfully neglected to process an AD application for appellant effective December, 1970.

We reverse.

On December 18, 1970 appellant was involved in an automobile accident. She had been employed by the Employment Security Commission, but as a result of the car accident, she could not continue her employment. Thereafter, she filed an application for assistance under the aid to families with dependent children (AFDC) Program for herself and her six minor children. This application was approved in December, 1970. In March, 1971 at the advice of the caseworker, appellant applied for AD seeking more assistance. That application was subsequently denied in June, 1971. The second application on behalf of the appellant was taken on November 18, 1971, which was approved and made effective to December, 1971 under the AD program. At the present, she is receiving assistance from the appellee under the AD Program. Appellant's application of March, 1971 for AD was denied by appellee's medical review team because the information which they had did not show permanent impairment on the part of the appellant.

On June 14, 1972 appellant, through her attorney, requested a hearing to appeal the amount of assistance not granted. The hearing was held on June 29, 1972 before appellee's hearing officer who recommended that the appeal be denied and her recommendation was concurred in by the Appeals Review Committee.

Appellee claims that appellant had the burden of showing that she was entitled to AD in 1970 and that she failed to sustain that burden. Appellee further claimed that appellant had the burden of showing at the hearing held in June, 1972 that appellee should have approved her application for AD which she made in March, 1971 and that she failed to sustain that burden.

At the hearing of June, 1972, the caseworker was asked why the first application had been denied while the second had been approved. The record reveals the following testimony:

"Mr. Martone: What was the difference in the set of circumstances in 6/7/71 and 11/8/71 or does the record show?

"Mr. Richards: The record wouldn't show that, I would have to go through each and everyone of these medicals and find the date on them; we might have sent her back to get more medicals. The worker probaby thought that she was disabled and was not satisfied with the state office decision so the worker requested that she go back and get more medicals and she re-submitted it, there could have been a change in the Medical Social Summary that went forward and there could have been added medicals. And the reason that they turned it down originally at state office, we couldn't say at this level because it is done by the medical review team."

At the hearing, appellant testified as follows:

"Mr. Martone: You were denied June and then aproved November 8. From what you understand of your condition in your own words what was the difference in your condition between these two dates.

"Mrs. Aragon: There was no difference, to be truthful there was no difference at all.

"Mr. Martone: Do you have any idea why you were denied once and then approved the second time.

"Mrs. Aragon: Yes, Mr. Bailey informed me that he had not been able to get sufficient medical documents at the hospital they would not explain or put down what my disability was nor to what exent [sic]."

The State of New Mexico, through its Health and Social Services Department, administers an Aid to the Aged, Blind or Disabled (AABD) Program pursuant to the Social Security Act, 42 U.S.C. §§ 1381–1385 and in accordance with regulations promulgated by the Department of Health, Education and Welfare and by the Board of the Health and Social Services Department, under authority of state statute, § 13–1–4, N.M.S.A. 1953 (Repl. Vol. 3).

Appellee had in effect the following regulations at all material times which are quoted in part as follows:

"231.54—DISABILITY

231.541—DEFINITION—To be eligible for AABD on the condition of disability the person must be suffering from a permanent physiological, mental or psychological impairment that, when considered in connection with the pertinent socio-economic conditions, results in his being substantially unable to engage in employment or homemaking within his remaining ability.

" * * *

"231.543—DETERMINATION OF DISABILITY

A. *Obtaining Information*—The local office is responsible for obtaining medical information relating to the alleged impairment. The following types

of medical information are acceptable for use in determining the existence and extent of an impairment:

"1. for injury, illness or disease, a current and complete medical evaluation by a medical doctor or an osteopathic physician, including appropriate evaluations by specialists, if indicated;

" * * *

"The foregoing information may be available at the time of application if the client has been receiving medical attention. The client should be requested to have the appropriate person send a written report to the local office if the information is based upon an examination made within 90 days of the date of application. If the client is not competent to assume the responsibility of obtaining a report, the local office will secure the report, either on Form 301, or an equivalent narrative report. The 90 days requirement may be waived by the review team.

"The required evaluations must be in writing and may be supplemented by recorded content of verbal discussions. Copies of all reports shall be put in the case record.

"If the required evaluations are not available through the client, the local office will follow the procedures set forth in Section 303 of this volume.

" * * *

"B. *Analysis of Socio-Economic Factors*—In addition to the responsibility for obtaining information relating to the impairment of the applicant, the local office must make an analysis of the socioeconomic factors in relation to the impairment. This analysis, along with the reported evidence of impairment, will be sent to the review team for a determination of eligibility on the condition of disability. The social information must be complete enough to give the team a clear picture of the client in relation to his impairment and his environment. The following outline may be used as a guide in preparing the medical-social summary for review by the review team."

The record fails to reveal that HSSD provided the applicant with the requisite assistance in "obtaining medical information relating to the alleged impairment." Due to the failure of the appellee to obtain the necessary medical information to establish the disability of appellant, the medical review team, the hearing officer and the Appeals Review Committee recommended denial of applicant's first application for AD. The hearing officer denied the appeal filed on behalf of Mrs. Aragon.

We do not decide whether appellant was entitled to benefits under the AD Program December, 1970 or in March, 1971 or in June, 1972. This is a function of the medical review team, the hearing officer, and the Appeals Review Committee. We do decide that under HSSD Regulations, 231.-541 and 231.543, the appellee had a duty to obtain pertinent medical information related to the alleged impairment claimed by Mrs. Aragon in order to determine whether she was qualified for benefits under the AD Program. After fulfilling this duty, the appellee may make its decision. This duty existed on the part of appellee when the appellant applied for AD and when the appellant appealed her case to the administrative hearing officer. Therefore, appellant is entitled to a new hearing regarding the question of disability from December, 1970 through November, 1971.

This case is reversed and remanded for proceedings consistent herewith.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.